1   Michael J. McKeon (admitted *pro hac vice*)
    mckeon@fr.com
2   Joshua B. Pond (admitted *pro hac vice*)
    pond@fr.com
3   FISH & RICHARDSON P.C.
    1425 K Street, NW, Suite 1100
4   Washington, DC  20005-3500
    Telephone:  (202) 783-5070
5   Facsimile:  (202) 783-2331

6   Shelley K. Mack (SBN 209596)
    mack@fr.com
7   FISH & RICHARDSON P.C.
    500 Arguello Street, Suite 500
8   Redwood City, CA  94063
    Telephone:  (650) 839-5070
9   Facsimile:  (650) 839-5071

10  Attorneys for Defendant

11  LG ELECTRONICS MOBILECOMM U.S.A., INC.

12                     UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                          SAN JOSE DIVISION

15

16  ZOLTAR SATELLITE SYSTEMS, INC., a          Civil Action No. 5:06-CV-00044-JW
    Delaware corporation
17                                             **MEMORANDUM OF POINTS AND**
              v.                               **AUTHORITIES IN SUPPORT OF**
18                                             **DEFENDANT LG ELECTRONICS**
    LG ELECTRONICS MOBILE                      **MOBILECOMM U.S.A., INC'S MOTION**
19  COMMUNICATIONS COMPANY, aka LG             **FOR SUMMARY JUDGMENT OF**
    ELECTRONICS MOBILECOMM; LG                 **COLLATERAL ESTOPPEL**
20  ELECTRONICS, INC.; MOTOROLA, INC.;
    AUDIOVOX COMMUNICATIONS
21  CORPORATION; UTSTARCOM INC.;               Date:        June 11, 2007
    UTSTARCOM PERSONAL                         Time:        9:00 a.m.
22  COMMUNICATIONS, fka AUDIOVOX               Judge:       Honorable James Ware
    COMMUNICATIONS CORPORATION;                Courtroom: 8
23  SANYO NORTH AMERICA CORPORATION;
    SANYO ELECTRIC CO., LTD.; PALM, INC.,
24  WHERIFY WIRELESS, INC.; SPRINT
    CORPORATION
25

26

27

28

I.        INTRODUCTION

This case is simply another attempt by Plaintiff Zoltar Satellite Alarm Systems, Inc. ("Zoltar") to relitigate patent infringement allegations already decided against it by a jury and this Court, culminating in the entry of final judgment and an award of attorneys' fees against Zoltar. Zoltar's claims against LG Electronics MobileComm U.S.A. Inc. ("LGE MobileComm") are barred by collateral estoppel to the extent they accuse the MS-assisted mode of operation of LGE MobileComm cellular telephone handsets containing Qualcomm MSM chipsets using gpsOne technology.  To prevent Zoltar from wasting the resources of this Court and the new panoply of defendants it has sued for using technology already deemed noninfringing by this Court, LGE MobileComm seeks an order granting summary judgment of collateral estoppel.

In this suit, Zoltar accuses defendants (manufacturers and/or sellers of cellular telephone handsets) of infringing four related patents - U.S. Patent Nos. 5,650,770 ("the '770 patent"), 5,963,130 ("the '130 patent"), 6,198,390 ("the '390 patent"), and 6,518,889 ("the '889 patent") (collectively, the "Zoltar Patents").  Three of these patents were at issue in the prior lawsuit filed by Zoltar against Qualcomm, Inc., SnapTrack, Inc. and Sprint Corp. (collectively, "Qualcomm") and fully litigated in this Court.  The fourth patent – the '889 patent – is a closely-related continuation-in-part of the '390 patent that shares much of its scope and written disclosure and many of its claim terms.

In that first patent infringement case, *Zoltar Satellite Alarm Systems, Inc. v. SnapTrack, Inc., Qualcomm, Inc. and Sprint Corp.*, Case No. C-01-20291 JW ("*Zoltar I*"), filed in this Court five and a half years ago, Zoltar accused Qualcomm of infringing the '770, '130 and '390 patents. Qualcomm, Inc. is the world's dominant supplier of processor chips that serve as the "brains" of cellular telephone handsets, provide most of their functionality, and implement the E-911 technology accused by Zoltar of infringement (referred to by Qualcomm, Inc. as "gpsOne chipset technology").  Specifically at issue in the previous litigation was one mode of determining handset location implemented by Qualcomm Inc.'s gpsOne chipset referred to as "Mobile Station Assisted" ("MS-assisted").

1    As the Court knows, Zoltar lost on every infringement claim it brought against Qualcomm

2    with respect to those patents, and further suffered three adverse Markman rulings, several adverse

3    summary judgment rulings, an adverse jury verdict and adverse post-trial rulings.  Most relevant

4    here, the Court found that handsets containing the accused Qualcomm chipsets did not infringe due

5    to the absence of (1) the "location" claim limitation; (2) the "demodulator" claim limitation; and (3)

6    the "precise time-of-day" claim limitation" as applied to the MS-assisted mode of operation of

7    gpsOne chipset technology.  With nothing left in the case but Qualcomm's invalidity counterclaim,

8    Zoltar agreed to final judgment entered against it on December 5, 2006.

9    Having lost, Zoltar ran from this Court to try again in Texas, this time against Qualcomm's

10   customers who manufacture and/or sell cellular telephone handsets using Qualcomm's gpsOne

11   chipsets, including LGE MobileComm.  Every single one of the 79 accused LGE MobileComm

12   cellular handsets contains either the exact same Qualcomm chipsets accused of infringement in

13   *Zoltar I* or a subsequent generation chipset using the same gpsOne chipset technology.  In light of

14   the clear overlap between the California and Texas cases, the Eastern District of Texas transferred

15   Zoltar back to this Court.

16   What has happened since only confirms the futility of proceeding any further with respect to

17   most of Zoltar's infringement assertions.  For example, Zoltar's preliminary infringement

18   contentions show that many of its infringement claims here are identical to those already decided

19   against it by this Court and the jury.  Thus, Zoltar's contentions accusing LGE MobileComm[1]

20   cellular handsets cannot stand with respect to the Zoltar Patents' (1) "location" claim limitation

21   (found in 12 of the 18 asserted claims); (2) "demodulator" claim limitation (found in the remaining

22   six asserted claims); and (3) "precise time of day" claim limitation (found in the same six claims) as

23   applied to the MS-assisted mode of operation of gpsOne chipset technology.

24   Summary judgment disposing of Zoltar's claims against LGE MobileComm is mandated

25   under the circumstances, and such a ruling will significantly and appropriately narrow the scope of

26

27   [1]   With respect to Zoltar's assertions against the other defendants in this action, collateral estoppel precludes further litigation for the same reasons stated herein, and other defendants thus are filing concurrent motions of joinder.

28

1   this litigation.  Dozens of the handsets accused here, for example, operate only in the MS-assisted

2   mode of operation that was squarely at issue and found noninfringing in *Zoltar I.  See, e.g., Amgen,*

3   *Inc. v. Genetics Institute, Inc.*, 98 F.3d 1328 (Fed. Cir. 1996) (affirming summary judgment

4   precluding patentee from asserting claims of "child" patent in second case based on determination

5   of issues in first case involving "parent" patent); *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651

6   (Fed. Cir. 1984) (affirming summary judgment barring infringement allegations in a second case

7   based on ruling of non-infringement in earlier case as to different products of different defendants);

8   *Home Diagnostics Inc. v. LifeScan, Inc.*, 120 F. Supp. 2d 864, 868 (N.D. Cal. 2000) (granting

9   summary judgment of collateral estoppel as to different products in a second case, noting that "[i]f a

10  structure in a product is found to be identical to a structure in an otherwise different, previously

11  litigated product, the judgment as to whether that structure meets the relevant claim element must

12  apply to the later litigation to avoid repetitive litigation of the same issues.")

13  **II.       STATEMENT OF MATERIAL FACTS**

14      **A.       The Zoltar Patents**

15      Zoltar alleges that wireless emergency location determination technology deployed in

16  wireless networks, commonly referred to as "E-911," infringes four patents issued to Dr. Dan

17  Schlager and assigned to Zoltar: the '770 patent, the '130 patent, the '390 patent and the '889

18  patent.  (Exs.[2] 1-4.)  Three of these four patents were at issue in *Zoltar I.*  The '889 patent, issued

19  after *Zoltar I* was filed, is in the same patent family as the '770, '130 and '390 patents and is a

20  continuation-in-part of the '390 patent.  (Ex. 4.)  The '889 patent also recites a voice-activated

21  personal alarm system, but is otherwise the same in all material respects as the other patents in its

22  family for purposes of this Motion.  (Ex. 4. at Abstr.)

23      The Zoltar Patents claim two embodiments of personal alarm systems with position location

24  technology: (1) those that receive navigational information and calculate a location in the remote

25

26      [2] Unless otherwise noted, all exhibits referenced herein are appended to the Declaration of Shelley K. Mack in

27  Support of LGE MobileComm's Motion for Summary Judgment of Collateral Estoppel ("Mack Decl."), submitted
    herewith.

28

unit, or handset ("the handset claims"), and (2) those that receive and demodulate navigational information and generate a precise time-of-day in the remote unit, and transmit the demodulated navigational and precise time-of-day information to a base station, or cellular tower system, where a location is calculated ("the base station claims"). (Ex. 5 at 2:6-8.)

Claim 55 of the '770 patent, from which asserted claim 61 depends, is exemplary of the handset claims:[3]

    55.    A personal alarm system remote unit comprising:

        a navigational receiver for providing a **location**[4] of the remote unit;

        at least one manually operated switch having an output, the at least one switch defining a panic button; and

        a radio transmitter connected for receiving the remote unit location, the at least one switch output, defining a switch status, and transmitting the remote unit location and the switch status.

The "location" requirement highlighted above was dispositive in *Zoltar I* because it was missing from the accused Qualcomm MS-assisted gpsOne chipset technology.

Claim 11 of the '390 patent is exemplary of the base station claims:[5]

    11.    A personal alarm system remote unit, comprising:

        a navigational receiver for receiving navigational information;

        a **demodulator** for demodulating the received navigational information;

        timing circuits for providing **precise time-of-day information**;

        a manually operated switch defining a panic button and having an output signal defining a switch status wherein operation of the panic button produces a change in the switch status; and

        radio transmitter for transmitting the demodulated navigational information, the precise time-of-day information, and the switch status.

---

[3] The handset claims include 12 of the 18 asserted claims--claim 61 of the '770 patent, claims 28-29, 31-32 and 34-35 of the '130 patent, and claims 1, 8-9, and 12-13 of the '889 patent.

[4] Unless otherwise noted, all emphasis throughout this brief has been added.

[5] The base station claims include the remaining six of the 18 asserted claims--claim 11 of the '390 patent and claims 14, 17-18 and 21-22 of the '889 patent.

1    The "demodulator" and "precise time-of-day information" requirements highlighted above were

2    also dispositive in *Zoltar I*, as both were found absent from the accused MS-assisted mode of

3    operation of Qualcomm gpsOne chipset technology.

4            The claims of all four Zoltar Patents are directed to the same subject matter and use the same

5    terms and phrases.  Claim 14 of the '889 patent, for instance, differs from claim 11 of the '390

6    patent only in that the alarm described in claim 14 uses a "voice activated detector" while the alarm

7    of claim 11 is activated by a "manually operated switch."  (*Compare* Ex. 4 at 31:15-28 *with* Ex. 3 at

8    29:38-52.)  Viewed in light of the terms construed in *Zoltar I*, the similarities between the '889

9    patent and the three patents at issue in *Zoltar I* are even more striking.  The terms construed in

10   *Zoltar I* appear repeatedly throughout the claims of the '889 patent; claim 4, for instance, includes

11   at least fifteen terms already construed in *Zoltar I*.  (Ex. 4 at 29:64-30:24.)

12           Most critically, the key terms at issue in this Motion and interpreted in *Zoltar I* – (1) a

13   "navigational receiver for providing a **location** of the remote unit," (2) "timing circuits for

14   providing **precise time-of-day information**," and (3)  a "**demodulator** for demodulating received

15   navigational information" – all appear in the presently asserted claims of the '889 patent.  (*Id*. at

16   29:41-43, 30:50-54, 31:15-21, 32:4-10.)  Forty-three of the '889 patent's fifty-one figures appear in

17   the '390 patent, as does most of its specification.  Since the '889 patent is in the same priority chain

18   as the other Zoltar Patents, limitations on the scope of those patents apply equally to the '889 patent.

19   *See* Section IV(A)(4)(a), *infra*.

20           **B.        The *Zoltar I* Complaint**

21           On March 30, 2001, Zoltar sued Qualcomm in this Court in *Zoltar I*, alleging that

22   Qualcomm's gpsOne wireless location determination technology infringed claims 32, 34, 36-37 and

23   55 of the '770 patent, claims 13-14, 28-32 and 34-35 of the '130 patent, and claim 11 of the '390

24   patent.[6]  (Ex. 6, ¶¶ 11, 18.)  Zoltar asserted that Qualcomm directly infringed, contributorily

25   infringed, and induced infringement of the Zoltar Patents by making, using, offering for sale and/or

26   _____

27       [6] Claims 32 and 55 of the '770 patent, claims 13-14 and 28 of the '130 patent, and claim 11 of the '130 patent are
         independent; claims 34 and 36-37 of the '770 patent and claims 29-32 and 34-35 of the '130 patent are dependent.

28                                                                     MEMO OF POINTS AND AUTHS ISO LG'S MOT FOR SUMMARY
                                                                       JUDGMENT OF COLLATERAL ESTOPPEL
                                                                       Civil Action No. 5:06-CV-00044-JW

1    selling "hardware and/or software products involving wireless device location technology such as

2    the E-911 service, including the MSM3300 chip sets." (*Id.* at ¶ 11.)

3        During pre-trial proceedings in *Zoltar I*, Zoltar abandoned its infringement allegations as to

4    claims 34, 36-37 and 55 of the '770 patent and claims 14, 28-29 and 34-35 of the '130 patent, and

5    final judgment in *Zoltar I* was rendered establishing no infringement of claim 32 of the '770 patent,

6    claims 31-32 and 34-35 of the '130 patent, and claim 11 of the '390 patent.

7        **C.    The Accused Products in *Zoltar I***

8        The Qualcomm MSM 3300 and MSM 5100 chipsets at issue in *Zoltar I* embodied

9    Qualcomm's Assisted GPS ("A-GPS") technology. (Ex. 12 at 1599:10-14.) A-GPS differs from

10   stand-alone GPS in that it relies on assistance from other ground-based elements of a wireless

11   network to facilitate location determination. (Ex. 9 at 1.) A-GPS is a cellular location solution that,

12   unlike stand-alone GPS, works in challenging environments. (*Id.* at 1-2.) Qualcomm developed its

13   A-GPS position location technology, called "gpsOne," in response to the "enhanced" or "E"-911

14   mandate from the Federal Communications Commission ("FCC") requiring wireless telephone

15   carriers to upgrade their systems so that when a cellular phone user makes a 911 call, the user's

16   location is pinpointed within 30 seconds of call placement. (Ex. 10 at 1-2.) The MSM 3300 and

17   5100 chipsets accused in *Zoltar I* use gpsOne technology, which assists wireless carriers to comply

18   with the FCC's E911 mandate. (Ex. 11 at ¶ 11.)

19       Qualcomm's gpsOne chipsets function in three modes of operation: "stand-alone GPS,"

20   "Mobile Station ("MS")-based" and "MS-assisted."[7] (Ex. 9 at 1.) In MS-assisted mode, "gpsOne

21   technology utilizes assistance data from a location server in the wireless network in combination

22   with A-GPS circuitry and software in the wireless device." (*Id.* at 3.) The "GPS receiver uses

23   assistance data from a location server to make measurements related to its distance from the GPS

24   satellites, then sends this information to the location server where the position is calculated." (*Id.*)

25

26

27

28       [7] The "MS-assisted/Hybrid" operational mode is a subcategory of the "MS-assisted" mode. (Patrick Decl., n. 1.)

1    The accused MSM 3300 and 5100 chipsets in *Zoltar I* operated in MS-assisted mode.[8]  (Ex. 12 at

2    1599:10-14.)

3    **D.    The Adverse Rulings and Verdict in *Zoltar I***

4    **1.    This Court's Three *Markman* Rulings in *Zoltar I***

5          Two separate claim construction hearings were held, three lengthy rounds of briefing were

6    conducted, and three extensive *Markman* rulings were issued by this Court in *Zoltar I.*  The Court

7    even permitted the parties to file overlength claim construction briefs to ensure their positions were

8    fully evaluated on the merits.  (Ex. 18.)  After the first *Markman* hearing on March 29, 2002, the

9    Court issued its first claim construction ruling on May 16, 2002, construing thirteen claim terms.

10   (Ex. 19 at 3-7.)  Following a second *Markman* hearing on January 23, 2003, the Court issued a

11   second *Markman* order on February 27, 2003 construing four additional terms.  (Ex. 20.)  Finally,

12   this Court permitted additional briefing on the term "location" and issued a third *Markman* ruling

13   refining its construction of that term on November 17, 2003.  (Ex. 21.)

14         In its first *Markman* order, after thorough analysis of the intrinsic evidence, the Court

15   construed the means-plus-function element "demodulator for demodulating the received

16   navigational information" to have the structure of "a circuit within the navigational receiver which

17   extracts positional aiding information from an electronic signal or carrier."  (Ex. 19 at 5.)  The

18   Court construed means-plus-function element "timing circuits for providing precise time-of-day

19   information" to have the function of "provid[ing] precise time of day information" and the structure

20   of "circuitry for generating and/or storing precise time of day information, as represented by Fig. 19

21   (610) of the 770 patent."  (*Id.*)

22         In its second *Markman* order, after the same careful analysis, the Court construed the term

23   "location" in the phrase "navigational receiver for providing a location of the remote unit" to mean

24   "a position or site occupied or available for occupancy or marked by some distinguishing feature,"

25   including "distance from a central point."  (Ex. 20 at 3.)  The Court construed the term "providing

26   precise time-of-day information" in the phrase "timing circuits for providing precise time-of-day

27

28          [8] Neither the "stand-alone GPS" nor the "MS-based" modes of operation are the subject of the present motion.

1   information" to mean "providing a measure of time sufficiently precise to substitute for one satellite

2   measurement," noting that Plaintiff's own expert endorsed this construction. (*Id*. at 4.)

3        In its third *Markman* ruling, the Court refined its construction of the term "location" as

4   follows: "[t]he term 'location' means a position or site occupied or available for occupancy or

5   marked by some distinguishing feature. The term 'location' is broad enough to include the concept

6   of a distance from a fixed, central point on the earth." (Ex. 21 at 1.)

7                    **2.    The Court's Summary Judgment Rulings in *Zoltar I***

8        The parties filed more than ten summary judgment motions on a variety of infringement and

9   validity issues in *Zoltar I*. The Court issued orders that, among other things, (1) granted summary

10  adjudication of no literal infringement of claims 31-32 and 34-35 of the '130 patent (Ex. 22) and

11  denied summary judgment of infringement of claims 31 and 32 of the '130 patent and claim 11 of

12  the '390 patent (Ex. 23). In granting summary adjudication of no literal infringement, the Court

13  ruled that the "pseudorange" provided by the handset is not a "location" as defined by the Court,

14  and that a pseudorange is only one piece of information needed to determine location. (Ex. 22 at 3.)

15  *See* Section IV(A)(1), *infra*. Denying summary judgment of infringement, this Court found that

16  Zoltar had not shown that the accused handsets calculate and transmit "location," or that they

17  provide "precise time-of-day information." (Ex. 23 at 4-5.) Zoltar was denied leave to seek

18  reconsideration of the Court's Order on September 29, 2003. (Ex. 24.)

19                    **3.    The *Zoltar I* Jury Trial and JMOL Ruling**

20       After three years of preparation, three Markman hearings, and ten summary judgment

21  motions, *Zoltar I* was tried to a jury in February and March 2004. The jury "heard evidence that

22  various companies which manufacture cellular telephone handsets have purchased from Qualcomm

23  MSM 3300 and 5100 chipsets," "evidence that these chipsets are incorporated into certain cellular

24  telephone handsets," and "evidence about SnapTrack's products and services and how those

25  products and services may be used in a cellular telephone network by Sprint and Verizon Wireless."

26  (Ex. 14 at 2218:6-15.) At the close of evidence, the parties filed motions for judgment as a matter

27  of law; the motions were taken under submission, and the case submitted to the jury. (Ex. 25 at

28

1:19-21.)  On March 25, 2004, after a three-week trial and lengthy deliberations, the jury rendered a partial verdict finding no direct, contributory infringement or induced infringement, either literally or under the doctrine of equivalents, of claim 32 of the '770 patent, and claims 13, 31, 32, 34 and 35 of the '130 patent.  (Ex. 26 at 2-3, 7-11; Ex. 27 at 2427:17-2428:1; 2428:8-10, 12-13, 15-16, 18-19, 21-22; 2430:3-2431:5.)  The jury was unable to reach a verdict as to infringement of claim 11 of the '390 patent.  (Ex. 27 at 2431:22-2432:7.)

After the verdict was returned, the parties renewed their motions for judgment as a matter of law, and Zoltar moved in the alternative for a new trial on claim 11 of the '390 patent.  (Ex. 25 at 1.)  Those motions were briefed and argued, and on June 26, 2004, the Court entered judgment in favor of Qualcomm and against Zoltar as to infringement of the '770 and '130 patents, granted Qualcomm's motion for judgment as a matter of law of noninfringement of claim 11 of the '390 patent, and denied Zoltar's motion for a new trial.  (*Id*. at 5.)  As to claim 11, the Court ruled that Zoltar presented no evidence that the accused products had a demodulator or timing circuits for providing precise time-of-day information, as required by the claims.  (*Id*. at 4.)

### 4.  This Court's Entry of Judgment and the Federal Circuit Appeal

On July 26, 2004, a judgment consistent with the Court's Order of the same day was entered.  (Ex. 28.)  Zoltar appealed to the Federal Circuit, which dismissed the appeal on February 1, 2005 for lack of a final judgment based on unadjudicated counterclaims.  (Ex. 29 at 2.)  On February 24, 2005, Zoltar moved for certification of judgment, a collateral order or dismissal of Qualcomm's counterclaims without prejudice.  After argument, the Court denied Zoltar's motion but "modif[ied] its Interlocutory Judgment to declare that the accused products do not infringe the asserted claims of the patents in suit" and ordered further proceedings as to unenforceability of the '770 patent and invalidity of the '130 patent. (*Id*. at 3-8.)  With nothing left in the case but the validity challenge to its patents, Zoltar agreed to the entry of final judgment against it, which was duly entered on December 5, 2006 along with an award of attorneys' fees to Qualcomm.  (Ex. 30.)

1

**E.      The *Zoltar II* Complaint and Accused Products**

2          On June 7, 2005, Zoltar filed this patent infringement suit in the Eastern District of Texas

3   against eleven defendants, alleging infringement of the '770, '130, '390 and '889 patents.  (Ex. 7.)

4   Zoltar alleged that defendants infringed the Zoltar Patents by "inducing and contributing to the

5   manufacture, use, sale, and/or offer for sale of cellular telephones equipped with E-911

6   technology."  (*Id*. at 3.)  The case was transferred to this Court on January 6, 2006.  Zoltar filed its

7   First Amended Complaint on January 19, 2007, dropping one defendant and adding four.  (Ex. 8.)

8          In this case, Zoltar alleges that defendants' cellular handsets using Qualcomm's MSM

9   chipsets and the cellular wireless systems with which those handsets are used infringe the Zoltar

10  Patents.  Zoltar asserts that 79 LGE MobileComm handsets infringe the Zoltar patents; of those

11  handsets, 54 operate only in MS-assisted mode, 24 operate in one or more other modes, and one has

12  no GPS receiver at all.[9]  (Declaration of Kyung-keun Choi in Support of Motion for Summary

13  Judgment of Collateral Estoppel ("Choi Decl."), ¶ 4.)  The Qualcomm MSM chipsets contained in

14  the *Zoltar II* accused products are either the very same chipsets at issue in *Zoltar I* or next

15  generation chipsets building on the original MSM 3300/5100 chipset technology.  (Declaration of

16  Chris Patrick in Support of Motion for Summary Judgment of Collateral Estoppel ("Patrick Decl."),

17  ¶¶3-4.)   All Qualcomm chipsets, and all LGE MobileComm handsets in which they are included,

18  employ the gpsOne chipset technology at issue in *Zoltar I.*  (*Id*., ¶¶ 4-7; Choi Decl., ¶¶ 5-9.)

19         **F.      Zoltar's Infringement Contentions in *Zoltar I* and *II***

20         There is no dispute that plaintiff's infringement contentions in *Zoltar I* are the same as those

21  it advances here.  While the names of the accused cellular handsets and the chipsets they contain

22  have changed in part, the features of those handsets that allegedly correspond to the elements of the

23  claims are identical.  In some instances, Zoltar accuses in this suit handsets containing the same

24  MSM 5100 chipset at issue in *Zoltar I.*  (Choi Decl., ¶ 4; Mack Decl., Ex. 15 at 2-3.)

25  //

26

27         [9] Neither of the other modes of operation — "stand-alone GPS" or "MS-based" — are the subject of the present
    motion.

28

**1.    Zoltar Makes the Same gpsOne Infringement Contentions Against All Defendants**

Because the Zoltar Patents are directed to personal alarm systems, Zoltar has struggled since the beginning of the prior litigation in 2001 to read its patent claims onto A-GPS E911 technology used by cellular phone handset manufacturers and network service providers.  In its Preliminary Infringement Contentions in this case, Zoltar alleges that all defendants use gpsOne technology infringing the same eighteen claims, many of which were at issue in *Zoltar I*: claim 61 (dependent from claim 55) of the '770 patent, claims 28-29, 31-32 and 34-35 of the '130 patent, claim 11 of the '390 patent, and claims 1, 8-9, 12-14, 17-18 and 21-22 of the '889 patent.  (Ex. 16.)  Tellingly, Zoltar uses the same claim charts against all defendants in this case to describe its infringement contentions, reflecting the fact that the conventional technology it accuses is based on an industry standard not patented by Zoltar.  (*Id*.)

**2.    Zoltar's Infringement Contentions in *Zoltar II* Are the Same Unsuccessful Contentions It Made in *Zoltar I***

Zoltar's Final Infringement Contentions in *Zoltar I* identify Qualcomm's MSM 3300 and MSM 5100 chipsets and "any subsequently manufactured chipsets which include a position location processor based on gpsOne technology" as infringing products.  (Ex. 17 at 1.)  Zoltar's Preliminary Infringement Contentions in this case and its Final Infringement Contentions in *Zoltar I* are substantially the same, and identical in their reliance on rejected infringement arguments to prove key claim limitations.  Three specific infringement contentions are relevant to this Motion.

**a.    Zoltar's Specific Contention in *Zoltar II* That the Accused Products Contain a Navigational Receiver for Providing Location Is the Same As in *Zoltar I***

In its March 28, 2003 Second Amended Final Infringement Contentions in *Zoltar I*, plaintiff alleged that the means-plus-function element "navigational receiver for providing a location of the remote unit" in claims 30-32 and 34-35 of the '130 patent was met because the accused "*gpsOne enabled cell phones provide a location of the remote unit* consistent with the Court's definition of location." (*Id*. at 10.)  Zoltar's infringement contention in this case as to the same element of claim 61 of the '770 patent, claims 28-29, 31-32 and 34-35 of the '130 patent and claims 1, 8-9, and 12-13

1    of the '889 patent is substantially identical: "[t]he [] Accused *Mobile Telephones each has [sic] a*

2    *GPS receiver that provides a location* of the [] Accused Mobile Telephone."  (Ex. 15 at 3-4.)  Both

3    the jury and this Court rejected this contention in *Zoltar I.*

4                 **b.      Zoltar's Specific Contention in *Zoltar II* That the Accused**
                           **Products Contain Timing Circuits for Providing Precise Time of-**
5                          **Day Is the Same As in *Zoltar I***

6          In its Final Infringement Contentions in *Zoltar I*, Zoltar alleged the means-plus-function

7    limitation "timing circuits for providing precise time of day" in claim 32 of the '770 patent, claim

8    13 of the '130 patent and claim 11 of the '390 patent was satisfied because "*gpsOne enabled cell*

9    *phones include circuitry which provides precise time of day informatio*n, consistent with or

10   equivalent to Fig. 19 (610) of the 770 patent.  This includes, but is not limited to, one or more of the

11   clocks or time buffers in the MSM chip set as well as its equivalents."  (Ex. 17 at 6.)  Zoltar's

12   infringement contention here as to the same limitation of claim 11 of the '390 patent and claims 14

13   and 17-22 of the '889 patent is again substantially identical: "the [] Accused *Mobile Telephones*

14   *each has [sic] a circuit that provides precise time-of-day information* for use in determining

15   location."  (Ex. 15 at 7.)  Once again, the Court and the jury rejected this contention in *Zoltar I.*

16                **c.      Zoltar's Specific Contention in *Zoltar II* That the Accused**
                           **Products Contain a Demodulator for Demodulating Received**
17                         **Navigational Information Is the Same As in *Zoltar I***

18         In its *Zoltar I* Final Infringement Contentions, Zoltar alleged that the means-plus-function

19   limitation "demodulator for demodulating the received navigational information" in claim 32 of the

20   '770 patent, claim 13 of the '130 patent and claim 11 of the '390 patent was met because "[t]he

21   *gpsOne enabled phones include circuitry which extracts positional aiding information from an*

22   *electronic signal* or carrier.  This includes the demodulator and/or correlator within the MSM chip

23   set and its equivalents."  (Ex. 17 at 6.)  Zoltar's infringement contention in this case as to the same

24   limitation of claim 11 of the '390 patent and claims 14 and 17-22 of the '889 patent remains

25   substantially identical: "[e]ach of the [] Accused *Mobile Telephones* receives an electronic signal

26   and *includes a circuit that extracts positional aiding information from the signal.*"  (Ex. 15 at 11.)

27   The Court and the jury also rejected this specific infringement contention in *Zoltar I.*

28

III.    LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT OF COLLATERAL ESTOPPEL

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(C); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "[C]ourt[s] should utilize the salutary procedure of FED. R. CIV. P. 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources."  *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).

The doctrine of collateral estoppel is designed, "once a court has decided an issue of fact or law necessary to its judgment," to "preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  Collateral estoppel serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."  *Id.*  "'[T]he law is well settled that the pendency of an appeal has no effect on the finality or binding effect of a trial court's holding.'"  *Pharmacia & Upjohn Co. v. Mylan Pharma., Inc.*, 170 F.3d 1373, 1381 (Fed. Cir. 1999) (citation omitted)).

Under Ninth Circuit law, the defense of collateral estoppel requires proof of four elements by a preponderance of the evidence.  First, the disputed issues must be identical to those in the previous litigation.  *See McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004).  Second, the disputed issues must have been actually litigated in the prior action.  *See id.*  Third, the resolution of those disputed issues must have been necessary to support a final judgment in the prior case.  *See id.*  For purposes of collateral estoppel, a "'final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect,'" and need not be a final judgment for purposes of appeal.  *See, e.g., Dana v. E.S. Originals, Inc.*, 342 F.3d 1320, 1323 (Fed. Cir. 2003) (quoting Restatement (Second) of  Judgments § 13 (1982)).  Finally, plaintiff must have had a "full and fair" opportunity to litigate the same issue in the prior lawsuit.  *See Blonder-Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313, 333 (1971).  Collateral estoppel bars relitigation of infringement issues decided on summary judgment

1    or at trial in a prior lawsuit.  *See*, *e.g.*, *Colida v. Qualcomm Inc.*, 128 Fed. Appx. 765, 766 (Fed. Cir.

2    2005); *Dana*, 342 F.3d at 1324; *Security People, Inc. v. Medeco Security Locks, Inc*., 59 F. Supp. 2d

3    1040, 1044 (N.D. Cal. 1999).

4    **IV.     ZOLTAR IS BARRED FROM RELITIGATING INFRINGEMENT ASSERTIONS
             AGAINST THE MS-ASSISTED MODE OF OPERATION OF CELLULAR PHONE
5            HANDSETS USING GPSONE CHIPSET TECHNOLOGY WITH RESPECT TO
             ALL ASSERTED CLAIMS**

6            Zoltar's infringement claims under all four Zoltar Patents are barred by collateral estoppel

7    because this Court determined in *Zoltar I* that the MS-assisted mode of operation of cellular

8    telephone handsets using gpsOne chipset technology does not meet at least one limitation of each

9    claim asserted in *Zoltar II*.  All four elements required to establish collateral estoppel are easily

10   demonstrated here.  The MS-assisted mode of operation of accused LGE MobileComm cellular

11   telephone handsets using gpsOne chipset technology does not meet the "location," "precise time-of-

12   day," and "demodulator" limitations of the Zoltar Patents.  These issues have been fully, fairly and

13   finally adjudicated against plaintiff, and Zoltar cannot relitigate them now.

14           **A.     The Issues Related to the "Location," "Precise Time-of-Day," and
                    "Demodulator" Limitations Are the Same as in *Zoltar I***

15

16           Each asserted claim in *Zoltar II* contains one or more of the "location," "precise time-of-

17   day" and "demodulator" limitations that proved dispositive in *Zoltar I*.  As to each limitation, the

18   infringement issues involved are identical to those decided against Plaintiff in *Zoltar I*.

19           **1.     Issues Regarding the "Location" Limitation Are Identical**

20           There is no genuine dispute that the issue of whether "location" is determined by cellular

21   telephone handsets using MS-assisted gpsOne chipset technology is identical in both suits.  This

22   Court found in *Zoltar I* that the MS-assisted mode of operation of gpsOne chipset technology does

23   not provide a user's location; instead, location, as defined by the Court, is determined by the base

24   station.  (Ex. 22 at 3.)

25           In *Zoltar I*, a claim construction hearing was held to construe "location," and two separate

26   *Markman* orders issued interpreting the term.  This Court ruled that "location" in the phrase "a

27   navigational receiver for providing a location of the remote unit" means "a position or site occupied

28

or available for occupancy or marked by some distinguishing feature. The term 'location' is broad

enough to include the concept of a distance from a fixed, central point on the earth." (Ex. 21 at 1.)

The Court later determined that the accused MS-assisted[10] gpsOne chipsets do not determine a

"location" as required by the Zoltar Patents, but instead calculate only a pseudorange, or a distance

from a moving satellite to the handset plus unknown error. (Ex. 23 at 4-5.) Rejecting the argument

that a pseudorange is itself or equivalent to a "location," this Court denied Zoltar's motion for

summary judgment of infringement of the '130 patent and noted that:

> Qualcomm contends its 'navigational receiver,' the handset, does not provide a
> location, but instead provides a 'pseudorange.' Qualcomm explains that the
> 'pseudorange' is not 'a location,' nor even information from which, by itself, a
> location can be determined. Rather, Qualcomm contends that a 'pseudorange'
> is only one piece of information needed to calculate 'a position,' and that a final
> position calculation occurs in the base station. Qualcomm's expert, Stephen
> Wicker, states as follows:

> 43.    It should be noted that these pseudoranges are not sufficient for
> determining the location of the user --- they simply indicate the approximate
> distance of the user from several SV's [space vehicle]. We also need to know
> the exact locations of the SV's in order to determine our location. Standard
> 'stand alone' GPS receivers obtain the SV's locations by demodulating the L1
> signals and extracting the ephemeris data. As we will see, the accused products
> do not do this, but instead depend on other elements of the system in which
> they are used to demodulate the L1 signals, extract the ephemeris information
> and perform the location computation.

(*Id*. at 4 (citation omitted).) The Court relied on the same opinions of Qualcomm's expert in

granting its motion for summary adjudication of no infringement of claims 31-32 and 34-35 of the

'130 patent, ruling that the MS-assisted mode of operation of the accused gpsOne handsets does not

determine a "location" as required by the claims:

> Qualcomm's 'navigational receiver' is the handset. Qualcomm has produced
> evidence that its handset provides a 'pseudorange.' The Court finds that a
> 'pseudorange' is neither a 'position or site occupied or available for occupancy
> or marked by some distinguishing feature,' nor 'a distance from a fixed, central
> point on the earth.' Instead, the undisputed evidence establishes that a
> 'pseudorange' is only one piece of information needed to calculate location, and
> that a location calculation occurs in the base station. (Ex. 22 at 3.)

It is precisely this issue – whether the MS-assisted mode of operation of cellular handsets

using gpsOne chipset technology determines "location" – which Zoltar seeks to relitigate in this

---

[10] As noted previously, all chipsets at issue in *Zoltar I* operated in MS-assisted mode. (Ex. 12 at 1599:10-14.)

case.  For purposes of claim 61 of the '770 patent, claims 28-29, 31-32 and 34-35 of the '130 patent

and claims 1, 8-9, 12-13 of the '889 patent, Zoltar forwards the same infringement contentions in

this case as to the "location" limitation that it made in *Zoltar I*.  (*Compare* Ex. 17 *with* Ex. 15 at 3-

4.)  Other jurisdictions have found the contents of a plaintiff's infringement contentions dispositive

of whether the issues are identical.  *See Charles E. Hill & Assoc., Inc. v. Amazon.com*, 2005 WL

2488715, at *3 (E.D. Tex. Oct. 7, 2005).  The MS-assisted mode of operation of the gpsOne chipset

technology at issue in the two cases is the same for purposes of the "location" limitation of the

asserted claims, even though the chipset numbers have changed.  (Patrick Decl., ¶ 5.)  The same

claim element is at issue and asserted against products using the same gpsOne technology, leaving

no doubt that there is no genuine issue of material fact as to whether issues raised regarding the

term "location" are identical in *Zoltar I* and *Zoltar II*.

### 2.   Issues Concerning the "Precise Time-of-Day" Limitation Are Identical

Likewise, there is no question that the issue of whether the MS-assisted mode of operation

of cellular telephone handsets using gpsOne chipset technology provides "precise time-of-day" is

identical in both suits.  In *Zoltar I*, the Court construed "precise time-of-day information" in the

phrase "timing circuits for providing precise time-of-day information" to mean "providing a

measure of time sufficiently precise to substitute for one satellite measurement."  (Ex. 20 at 4.)

Zoltar alleged that gpsOne chipsets contain oscillators providing "precise time-of-day."  (Ex. 31 at

9:16-21.)  The Court rejected this argument in denying Zoltar's motion for summary judgment of

infringement and granting Qualcomm's motion for judgment as a matter of law, ruling that such

oscillators are not "independent, free-running timing circuit[s]" and do not provide precise time-of-

day.  (Ex. 23 at 5-6; Ex. 25 at 4.)  Finding no evidence of infringement of claim 11 of the '390

patent, this Court ruled on Zoltar's motion for summary judgment that:

> [T]here exists a genuine issue of material fact with respect to whether
> Qualcomm's clock in the handset provides precise time-of-day information.
> Qualcomm's expert Stephen Wicker, provides a lengthy explanation as follows.
>
> 63.  Neither the CDMA [Code Division Multiple Access] handsets nor the
> accused MSM chipsets perform a function or contain a structure that
> corresponds to timing circuits for providing precise time-of-day information.
> The only timing circuit disclosed in the specification that corresponds to this

element is an independent, free-running timing circuit identified, for example, as 610 in Figure 20. . . .  Handsets that include the accused MSM chips, by contrast, maintain oscillators that are continuously updated through phase locking to the base station pilot signal.  The base station pilot signal in the CDMA system is ultimately synchronized to GPS time. . . .

64.  The oscillators in the CDMA handset also do not perform the identical function as the timing circuits disclosed in the patents.  The CDMA handsets do not send any explicit time information to the base station, much less provide 'precise time-of-day information.'  They instead transmit a code event that has to be referenced to CDMA network time.  The code event does not represent a time of day, but is instead an indication of time within a window of a few minutes as opposed to twenty-four hours.

65.  Therefore, CDMA handsets lack the same or equivalent structure, and do not perform the identical function recited in this element.  The same is true of the accused MSMs which are a component of the handsets.

(Ex. 23 at 5-6.)  After trial, in granting Qualcomm's motion for judgment as a matter of law of noninfringement of claim 11 of the '390 patent, the Court found that:

There was no evidence that Samsung cellular telephones which contained chipsets manufactured by defendant Qualcomm and used in a cellular telephone system of defendant Snaptrack performed the identical or equivalent function of the means-plus-function claim element "timing circuits for providing precise time-of-day information" as those terms were defined by the Court…. Although the Court makes its finding independent of the jury's determination, it notes that the jury found no infringement by the defendants of either the '770 or the '130 patents' claims which contain…timing circuit elements which are identical to those claimed in the '390 patent.  (Ex. 25 at 4-5.)

With respect to claim 11 of the '390 patent and claims 14, 17-18 and 21-22 of the '889 patent in this case, Zoltar makes the same argument and the same infringement contentions regarding "precise time-of-day" that it made in *Zoltar I*.  (*Compare* Ex. 17 at 6 *with* Ex. 15 at 7.) *See Hill*, 2005 WL 2488715, at *3.  As with the "location" claim limitation, the MS-assisted mode of operation of the gpsOne chipset technology at issue in the two cases is the same for purposes of the "precise time-of-day" limitation of the asserted claims, even though the chipset numbers have changed.  (Patrick Decl., ¶ 6.)  As the same claim element is at issue and asserted against products using the same gpsOne technology in both *Zoltar I* and *Zoltar II*, there is no genuine issue of material fact as to whether issues raised regarding the term "precise time-of-day information" are identical.

**3.    Issues Relating to the "Demodulator" Limitation Are Identical**

The issue of whether the MS-assisted mode of operation of accused cellular telephone handsets containing gpsOne chipset technology contains a "demodulator" is also the same in both actions.  In *Zoltar I*, the Court construed "demodulator" in the phrase "demodulator for demodulating the received navigational information" to mean "a circuit within the navigational receiver which extracts positional aiding information from an electronic signal or carrier."  (Ex. 19 at 4-5.)  The Court applied this construction to find that the accused MS-assisted mode gpsOne chipsets do not demodulate navigational information from received GPS signals.  (Ex. 25 at 4.)  Granting Qualcomm's motion for judgment as a matter of law of noninfringement of claim 11 of the '390 patent, this Court found that:

> There was no evidence that Samsung cellular telephones which contained chipsets manufactured by defendant Qualcomm and used in a cellular telephone system of defendant Snaptrack performed the identical or equivalent function of the means-plus-function claim element "a demodulator for demodulating the received navigational information" as those terms were defined by the Court. . . . Although the Court makes its finding independent of the jury's determination, it notes that the jury found no infringement by the defendants of either the '770 or the '130 patents' claims which contain demodulator elements which are identical to those claimed in the '390 patent.

(*Id*. at 4-5.)  The Court relied again on Dr. Wicker's testimony in granting Qualcomm's motion for summary adjudication of noninfringement, ruling that "[s]tandard 'stand alone' GPS receivers obtain the [satellites'] locations by demodulating the L1 signals and extracting the ephemeris data . . . . the accused products do not do this, but instead depend on other elements of the system in which they are used to demodulate the L1 signals, extract the ephemeris information and perform the location computation."  (Ex. 22 at 3.)

In this second suit, Zoltar simply parrots the same infringement contentions for "demodulator" that it offered in *Zoltar I.*  (*Compare* Ex. 17 at 6 *with* Ex. 15 at 11.)  *See Hill*, 2005 WL 2488715, at *3.  Once again, the MS-assisted mode of operation of cellular phone handsets containing gpsOne chipset technology is the same in both cases for purposes of the "demodulator" limitation of asserted claim 11 of the '390 patent and claims 14, 17-18 and 21-22 of the '889 patent, even though the chipset numbers have changed.  (Patrick Decl., ¶ 7.)  There is complete identity of

issues as to infringement of claims containing the "demodulator" limitation.

####    4.    All Three Issues Remain Identical As Applied to the '889 Patent and the Newly Accused Products In *Zoltar II*

While Zoltar alleges infringement of one patent (the '889 patent) and a number of cellular handsets containing Qualcomm chipsets not at issue during *Zoltar I*, the issues described above are exactly the same as applied to this new patent and these chipsets.  The asserted claims of the '889 patent contain the same three limitations described above, and the additional gpsOne chipsets accused by Zoltar operate in exactly the same way as the chipsets at issue in Zoltar I.  Collateral estoppel thus applies equally to Zoltar's claims under the '889 patent and against the MS-assisted mode of operation of the accused LGE MobileComm cellular handsets containing these additional gpsOne chipsets.

#####        a.    Issues Related to the '889 Patent Are Identical To Those Litigated in *Zoltar I* For Purposes of Collateral Estoppel

As discussed in Section II(A), *supra*, for purposes of this Motion, the '889 patent is exactly the same in all relevant respects as the patents at issue in *Zoltar I*.  The terms construed in Zoltar I appear repeatedly throughout the claims of the '889 patent, including the terms "navigational receiver for providing a location of the remote unit," "timing circuits for providing precise time-of-day information," and a "demodulator for demodulating received navigational information."  (Ex. 4 at 29:41-43, 30:50-54, 31:15-21, 32:4-10.)  Such similarities are wholly intentional, as the '889 patent is a continuation-in-part of the '390 patent and is part of the same patent family as all three patents-in-suit in *Zoltar I*.  Collateral estoppel also bars infringement claims under a different patent not asserted in the first action where the patents are identical in all respects relevant to issues of infringement.  *See*, *e.g.*, *Vigil v. Walt Disney Co.*, 2003 WL 22016805, at *4 (N.D. Cal. July 31, 2003).

The Federal Circuit applied this principle in *Amgen*.  Patentee Genetics sued Amgen and other defendants in a first case alleging infringement of a "parent" patent relating to a drug treatment for anemia.  98 F.3d at 1329.  In the prior case, the court found the parent patent invalid for lack of enablement and the Federal Circuit affirmed.  *Id*.  In a later case, Genetics asserted

1   infringement of a "child" patent sharing the same disclosure as its parent.  The court granted

2   Amgen's motion for summary judgment barring Genetics from asserting infringement of the child

3   patent and the Federal Circuit affirmed, ruling that Genetics' infringement allegations resulted in

4   claim scope implicating the previously litigated enablement issue.  *Id*. at 1332.  The court rejected

5   Genetics' argument that the child patent had not been interpreted or even issued prior to judgment

6   in the previous case, holding that the enablement issue was "fully litigated for the identical product

7   on the identical specification" and "[t]hat issue can not be relitigated, although it could not be raised

8   until the continuation patent was granted."  *Id*.

9   

**b.    Issues In Both Suits Related to the MS-Assisted Mode of
Operation of Cellular Handsets Using gpsOne Chipset
Technology Are Identical for Purposes of Collateral Estoppel**

10

11          Similarly, while Zoltar now accuses LGE MobileComm cellular telephone handsets

12   including several Qualcomm chipsets not at issue in *Zoltar I*, those handsets use the same gpsOne

13   chipset technology in the MS-assisted mode of operation and operate in exactly the same way as the

14   MSM 3300 and MSM 5100 chipsets for purposes of determining pseudoranges.  (Patrick Decl., ¶

15   5.)  None of them calculate the user's location.  (*Id*.)  Like cellular phone handsets using the MSM

16   3300 and MSM 5100, the MS-assisted mode of operation of the accused LGE MobileComm

17   handsets using gpsOne chipset technology does not provide precise time-of-day, and does not

18   demodulate received navigational information.  (*Id*., ¶¶ 6-7.)  Infringement claims may be estopped

19   as to different products than those at issue in a prior suit if "premised on identical claim language

20   that formed the basis for the previously rejected infringement claim" and if the products operate in

21   the same way for purposes of infringement.  *Id*. at 1125; *see also Home Diagnostics Inc. v.*

22   *LifeScan, Inc*., 120 F. Supp. 2d 864, 870 (N.D. Cal. 2000); *Security People*, 59 F. Supp. 2d at 1045;

23   *Overhead Door Corp. v. Whiting Roll-Up Door Mfg. Co*., 215 U.S.P.Q. 428, 433 (W.D.N.Y. 1981)

24   ("In order for a defendant to successfully assert collateral estoppel against a patentee, however, it is

25   not necessary for the second accused device to be the exact same device as was previously found

26   non-infringing.").

27

28

In *Molinaro v. Fannon/Courier Corp.*, for instance, the Federal Circuit affirmed that collateral estoppel precluded infringement allegations in a second case based on a finding of non-infringement in a first case involving the products of a different defendant. 745 F.2d at 653-54. Plaintiff in *Molinaro* filed numerous lawsuits against more than fifteen defendants, accusing their radio receiver products of infringement. *Id*. at 653. After resolution of one of those cases, defendant Fannon/Courier moved for summary judgment in a separate case, asserting that collateral estoppel barred plaintiff's infringement allegations as to its radio receivers. *Id*. The Federal Circuit affirmed an order granting that motion, ruling that "where a determination of the scope of patent claims was made in a prior case, and the determination was essential to the judgment there on the issue of infringement, there is collateral estoppel in a later case on the scope of such claims, i.e., the determined scope cannot be changed." *Id*. at 655. The Court found that "the identical issue was decided previously; that issue was fully litigated in a previous case; the resolution of that issue was essential to a final judgment there; and the patent owner had a full and fair opportunity to litigate that issue." *Id*. Here, as in *Molinaro*, Zoltar had a full and fair opportunity to litigate issues relating to the "location," "precise time-of-day" and "demodulator" claim limitations as applied to the MS-assisted mode of operation of cellular telephone handsets using gpsOne chipset technology, and should be estopped from litigating them again.

This Court applied the holding of *Molinaro* in *Home Diagnostics* to preclude infringement claims against a defendant's new products based on a prior judgment of non-infringement of its older products, where, as here, the "operational features" relevant to the claims were the same in both products. 120 F. Supp. 2d at 867. The court held that "[i]f a structure in a product is found to be identical to a structure in an otherwise different, previously litigated product, the judgment as to whether that structure meets the relevant claim element must apply to the later litigation to avoid repetitive litigation of the same issues." *Id*. at 868. Just as in *Home Diagnostics*, Zoltar's infringement contentions regarding "location," "precise time-of-day" and "demodulator" elements, both here and in *Zoltar I*, relate to the same operational features of the MS-assisted mode of operation of the accused LGE MobileComm handsets using gpsOne chipset technology. Because

the same claim elements are at issue and asserted against products using the same technology, there is no genuine issue of material fact as to whether issues raised regarding the terms "location," "demodulator" and "precise time-of-day" are identical in the two cases as applied to the '889 patent and the MS-assisted mode of operation of the accused LGE MobileComm cellular handsets using gpsOne chipset technology.

**B.      The Issue of Whether the MS-Assisted Mode of Operation of Handsets Using gpsOne Chipset Technology Meets These Claim Limitations Was Actually Litigated in *Zoltar I***

There also can be no dispute as to the second element of LGE MobileComm's collateral estoppel defense – that the issue of whether the MS-assisted mode of operation of cellular phone handsets using gpsOne chipset technology meets the "location," "precise time-of-day" and "demodulator" claim limitations of the Zoltar Patents was actually litigated in *Zoltar I*.  The parties filed lengthy claim construction briefs to support their proposed constructions of these three claim terms, and argued their positions in two separate *Markman* hearings.  The Court issued three separate orders construing these terms, and even held a third round of briefing to refine its construction of the term "location."  The parties submitted multiple summary judgment motions requiring the Court to apply its constructions of these three terms, and fully briefed and argued those motions before this Court issued full and considered rulings on each, in some cases entertaining motions for reconsideration.  Zoltar also had the opportunity to present its case to a jury in a three-week trial, and to fully brief and argue post-trial motions for judgment as a matter of law. There is no serious question that infringement issues raised in this case regarding the terms "location," "precise time-of-day" and "demodulator" were fully litigated in *Zoltar I*.  *See In re Freeman*, 30 F.3d at 1466.

**C.      The Court's Findings in *Zoltar I* as to Whether the MS-Assisted Mode of Operation of Cellular Handsets Using gpsOne Chipset Technology Meet the "Location," "Precise Time-of Day" and "Demodulator" Limitations of the Zoltar Patents Were Necessary to Support Final Judgments**

Likewise, there is no material dispute that the Court's findings in *Zoltar I* regarding whether the MS-assisted mode of operation of cellular phone handsets using gpsOne chipset technology

1   meets the "location," "precise time-of-day" and "demodulator" claim limitations of the Zoltar

2   Patents were necessary to support final judgments.  As detailed above, the Court issued final

3   judgments in *Zoltar I* for purposes of collateral estoppel in ruling on the parties' summary judgment

4   motions, applying its construction of these claim terms to the accused technology.  *See id.* at 1466-

5   67.  The Court's construction of these three terms was provided to the jury for use in its

6   infringement determination, and the jury's noninfringement verdict in *Zoltar I* directly resulted from

7   those constructions and the evidence presented at trial.  In each case, the Court's construction of

8   these claim elements and its (and the jury's) findings that these limitations were absent in the

9   accused products were necessary to support a final judgment for purposes of collateral estoppel —

10  particularly the summary judgment and judgment as a matter of law orders described above.  As to

11  the third element of LGE MobileComm's collateral estoppel defense, there is once again no genuine

12  issue of material fact.

> **D.     Zoltar Had a Full and Fair Opportunity in *Zoltar I* to Litigate Whether the MS-Assisted Mode of Operation of Cellular Handsets Using gpsOne Chipset Technology Meets the "Location," "Precise Time-of-Day" and "Demodulator" Claim Limitations of the Zoltar Patents**

16          Finally, there is no material dispute that Zoltar had a full and fair opportunity in *Zoltar I* to

17  litigate whether the MS-assisted mode of operation of cellular telephone handsets using gpsOne

18  chipset technology meet the "location," "precise time-of-day" and "demodulator" claim limitations

19  of the Zoltar Patents.  Zoltar, the assignee of those patents, took the opportunity to propose

20  constructions of these three terms in *Zoltar I*, and had every opportunity to prove – whether on

21  summary judgment, at trial, or during post-trial motions – that the MS-assisted mode of operation of

22  the cellular telephone handsets containing gpsOne chipset technology it accused in *Zoltar I* and

23  accuses again in *Zoltar II* infringe the claims of the Zoltar Patents.  Zoltar was given the benefit of

24  an entire trial through jury verdict, and fully participated in post-trial motions.  Zoltar clearly had a

25  full and fair opportunity in *Zoltar I* to litigate the issue of whether the MS-assisted mode of

26  operation of cellular telephone handsets using gpsOne chipset technology meets the "location,"

27  "precise time-of-day" and "demodulator" claim limitations of the patents-in-suit, and thus no

28

genuine issue of material fact exists as to the final element of LGE MobileComm's collateral estoppel defense. *See Pharmacia*, 170 F.3d at 1380.

V. **CONCLUSION**

For the foregoing reasons, LGE MobileComm respectfully requests that the Court grant its motion for summary judgment of collateral estoppel to bar relitigation of infringement of the "location," "precise time-of-day" and "demodulator" claim limitations as they relate to the MS-assisted mode of operation of LGE MobileComm cellular telephone handsets using gpsOne chipset technology.

Dated: April 23, 2007                          FISH & RICHARDSON P.C.


                                               By: /s/ Shelley K. Mack
                                                   Shelley K Mack

                                               Attorneys for Defendant
                                               LG Electronics MobileComm U.S.A., Inc.

50412438.doc

1

**TABLE OF CONTENTS**

2

**Page**

3   I.   Introduction ........................................................................................................ 2

4   II.   Statement of Material Facts ............................................................................... 4

5        A.   The Zoltar Patents ................................................................................... 4

6        B.   The *Zoltar I* Complaint .......................................................................... 6

7        C.   The Accused Products in *Zoltar I* ......................................................... 7

8        D.   The Adverse Rulings and Verdict in *Zoltar I* ....................................... 8

9             1.   This Court's Three *Markman* Rulings in *Zoltar I* ..................... 8

10            2.   The Court's Summary Judgment Rulings in *Zoltar I* ............... 9

11            3.   The *Zoltar I* Jury Trial and JMOL Ruling ............................... 9

12            4.   This Court's Entry of Judgment and the Federal Circuit
13                 Appeal ...................................................................................... 10

          E.   The *Zoltar II* Complaint and Accused Products ................................... 11
14
          F.   Zoltar's Infringement Contentions in *Zoltar I* and *II* ........................ 11
15
              1.   Zoltar Makes the Same gpsOne Infringement Contentions
16                 Against All Defendants ............................................................ 12

17            2.   Zoltar's Infringement Contentions in *Zoltar II* Are the
                   Same Unsuccessful Contentions It Made in *Zoltar I* ............. 12
18
                   a.   Zoltar's Specific Contention in *Zoltar II* That the
19                      Accused Products Contain a Navigational Receiver
                        for Providing Location Is the Same As in *Zoltar I* ..... 12
20
                   b.   Zoltar's Specific Contention in *Zoltar II* That the
21                      Accused Products Contain Timing Circuits for
                        Providing Precise Time of-Day Is the Same As in
22                      *Zoltar I* ........................................................................ 13

23                 c.   Zoltar's Specific Contention in *Zoltar II* That the
                        Accused Products Contain a Demodulator for
24                      Demodulating Received Navigational Information
                        Is the Same As in *Zoltar I* ............................................ 13
25
     III.   LEGAL STANDARDS GOVERNING SUMMARY JUDGMENT OF
26          COLLATERAL ESTOPPEL ............................................................................ 14

27   IV.   Zoltar Is Barred From Relitigating InfringeMENT ASSERTIONS
           AGAINST THE MS-ASSISTED MODE OF OPERATION OF
28

i

**TABLE OF CONTENTS (cont'd.)**

Page

CELLULAR PHONE HANDSETS USING GPSONE CHIPSET
TECHNOLOGY with respect to ALL ASSERTED Claims..............................15

A.  The Issues Related to the "Location," "Precise Time-of-Day," and
     "Demodulator" Limitations Are the Same as in *Zoltar I* .....................15

     1.  Issues Regarding the "Location" Limitation Are Identical...................15

     2.  Issues Concerning the "Precise Time-of-Day" Limitation
          Are Identical....................................................................17

     3.  Issues Relating to the "Demodulator" Limitation Are
          Identical.........................................................................19

     4.  All Three Issues Remain Identical As Applied to the '889
          Patent and the Newly Accused Products In *Zoltar II*...........................20

          a.  Issues Related to the '889 Patent Are Identical To
               Those Litigated in *Zoltar I* For Purposes of
               Collateral Estoppel ......................................................20

          b.  Issues In Both Suits Related to the MS-Assisted
               Mode of Operation of Cellular Handsets Using
               gpsOne Chipset Technology Are Identical for
               Purposes of Collateral Estoppel ....................................21

B.  The Issue of Whether the MS-Assisted Mode of Operation of
     Handsets Using gpsOne Chipset Technology Meets These Claim
     Limitations Was Actually Litigated in *Zoltar I* ................................23

C.  The Court's Findings in *Zoltar I* as to Whether the MS-Assisted
     Mode of Operation of Cellular Handsets Using gpsOne Chipset
     Technology Meet the "Location," "Precise Time-of Day" and
     "Demodulator" Limitations of the Zoltar Patents Were Necessary
     to Support Final Judgments.............................................................23

D.  Zoltar Had a Full and Fair Opportunity in *Zoltar I* to Litigate
     Whether the MS-Assisted Mode of Operation of Cellular Handsets
     Using gpsOne Chipset Technology Meets the "Location," "Precise
     Time-of-Day" and "Demodulator" Claim Limitations of the Zoltar
     Patents ......................................................................................24

V.   CONCLUSION ..................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. McCurry,*
    449 U.S. 90 (1980) ........................................................................... 14

*Amgen, Inc. v. Genetics Institute, Inc.,*
    98 F.3d 1328 (Fed. Cir. 1996) ........................................................ 4

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........................................................................ 14

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,*
    731 F.2d 831 (Fed. Cir. 1984) ........................................................ 14

*Blonder-Tongue Lab., Inc. v. University of Ill. Found.,*
    402 U.S. 313 (1971) ........................................................................ 14

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ........................................................................ 14

*Charles E. Hill & Assoc., Inc. v. Amazon.com,*
    2005 WL 2488715, at *3 (E.D. Tex. Oct. 7, 2005) ........................ 17

*Colida v. Qualcomm Inc.,*
    128 Fed. Appx. 765 (Fed. Cir. 2005) ............................................. 15

*Dana v. E.S. Originals, Inc.,*
    342 F.3d 1320 (Fed. Cir. 2003) ................................................ 14, 15

*Home Diagnostics Inc. v. LifeScan, Inc.,*
    120 F. Supp. 2d 864 (N.D. Cal. 2000) ...................................... 4, 22

*In re Freeman,*
    30 F.3d at 1466 ......................................................................... 23, 24

*McQuillion v. Schwarzenegger,*
    369 F.3d 1091 (9th Cir. 2004) ........................................................ 14

*Molinaro v. Fannon/Courier Corp.,*
    745 F.2d 651 (Fed. Cir. 1984) ................................................... 4, 22

*Overhead Door Corp. v. Whiting Roll-Up Door Mfg. Co.,*
    215 U.S.P.Q. 428 (W.D.N.Y. 1981) .............................................. 21

*Pharmacia & Upjohn Co. v. Mylan Pharma., Inc.,*
    170 F.3d 1373 (Fed. Cir. 1999) ............................................... 14, 25

*Security People, Inc. v. Medeco Security Locks, Inc.,*
    59 F. Supp. 2d 1040  (N.D. Cal. 1999) ..................................... 15, 21

**TABLE OF AUTHORITIES (cont'd.)**

**Page(s)**

*Vigil v. Walt Disney Co.*,
 2003 WL 22016805, at *4 (N.D. Cal. July 31, 2003) ............................................................ 20

**Statutes**

FED. R. CIV. P. 56 ................................................................................................................ 14

50412438.doc

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28